United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KHOSROW ONBIRBACK, et al.,

Plaintiffs,

v.

PREMIER AUTO CREDIT, et al.,

Defendants.

Case No.  25-cv-05684-SVK

**ORDER ON MOTIONS TO COMPEL ARBITRATION**

Re: Dkt. Nos. 15, 43

Before the Court are two motions to compel arbitration:  one filed by Defendants Premier Auto Credit ("Premier"), Sean Rastegar, and Bruce Horowitz (Dkt. 15); and the other filed by Defendant Edward Mendoza (Dkt. 43).  This Order refers to Rastegar, Horowitz, and Mendoza as the "Individual Defendants" and refers to those Individual Defendants and Premier, collectively, as the "Moving Defendants."  The two motions are based on largely the same facts and legal authorities.  The reason two motions were filed is that at the time Premier and its employees Rastegar and Horowitz filed the first motion, they did not realize that Mendoza was also employed by Premier.  *See* Dkt. 22, 34.  Accordingly, Mendoza filed a separate motion to compel arbitration. All remaining Parties to this action have consented to the jurisdiction of a magistrate judge. Dkt. 7, 24, 51, 60.

The motions to compel arbitration are suitable for determination without a hearing. Civ. L.R. 7-1(b).  Having considered the record before it and the relevant law, the Court **GRANTS** both motions to compel arbitration and **STAYS** this case as between Plaintiffs and the Moving Defendants pending completion of arbitration.  In addition, pursuant to an attorney's fees provision in one of the contracts at issue in this case, the Court also **GRANTS** the request of Defendants Premier, Rastegar, and Horowitz for an award of $4,010.00 in reasonable attorney's fees incurred in moving to compel arbitration.

## I.    BACKGROUND

### A.    The parties and the allegations giving rise to this litigation

The Plaintiffs are San Jose Auto Outlet Plus Trucks Inc. ("SJAO") and its owner, Khosrow Onbirback.  Dkt. 1 ¶¶ 12-13.  The Defendants that remain in the case are:  (1) Premier and its employees Sean Rastegar (Chief Executive Officer), Bruce Horowitz (Chief Financial Officer, and Edward Mendoza (Director of Sales and Acquisition); and (2) KPMG, which Plaintiffs allege acted as an auditor for Premier.  *Id.* ¶¶ 13-16; Dkt. 15-2 ¶¶ 2-3; Dkt. 43-3 ¶ 2.[1]

It appears from the complaint that Plaintiff SJAO is an automobile dealership.  Dkt. 1 ¶¶ 1, 4.  Defendant Premier is alleged to be an independent subprime auto lender that "purchase[s] loans from dealers individually and in bulk for borrowers with bad credit or no credit."  *Id.* ¶ 3.  Premier typically appoints a sales representative to prepare and process loan applications at dealerships with which it contracts.  *Id.* ¶ 4.

Plaintiffs allege that in connection with Premier's work for SJAO pursuant to the Dealer Agreement discussed below, Premier and its employees falsified income and employment information in connection with 290 auto loan applications.  *Id.* ¶¶ 7-8, 57.  According to Plaintiffs, 79 of those 290 applications resulted in default, which caused Plaintiffs to suffer damages.  *Id.* ¶ 8.  The Complaint alleges that Premier sold the fraudulent loans to major banks.  *Id.* ¶ 9.

Plaintiffs allege that Defendant KPMG acted as an auditor for Premier and for major banks.  *Id.* ¶¶ 10, 17. [2]

### B.    The Dealer Agreement

On or about April 20, 2021, Plaintiff SJAO and Defendant Premier entered into a "Dealer Agreement."  Dkt. 15-2 ¶ 6 and Ex. 1 thereto (Dkt. 15-4).  Section 4.13 of the Dealer Agreement, entitled "Legal Action; Arbitration; Choice of Law; Venue," states as follows:

///

///

---

[1] Plaintiffs have dismissed the other Defendants named in the complaint:  William B. Thomas, Rogelio "Roger" Aguirre, and Leidy Quiroga.  *See* Dkt. 74, 87.

[2] KPMG's pending motion to dismiss will be addressed in a separate order.  KPMG is not a party to either of the pending motions to compel arbitration.

United States District Court
Northern District of California

Dealer[3] agrees that any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this arbitration clause and the arbitrability of the claim or dispute), between Dealer and Premier or our employees, agents, successors or assigns, which arises out of or relates to Dealer's representations and warranties, Dealer's assignment of any RISC to Premier, or to this Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at Dealer's or Premier's election, be resolved by neutral binding arbitration instead of in court. Dealer waives any right to have any Claim between Dealer and Premier resolved in court. Dealer waives any right to participate as a class representative or class member. Dealer agrees that this agreement involves interstate commerce, and any arbitration under this agreement to arbitrate shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et.seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

The following claims are excluded from the arbitration process: small claims actions, self-help remedies (such as repossession), foreclosure, replevin, garnishment, and/or individual injunctive relief. Pursuing an excluded claim in court does not waive any right to seek arbitration for claims outside the court's jurisdiction, or if an excluded claim is transferred, removed, or appealed to a different court.

Arbitrations will be conducted by a mutually agreeable arbitrator or arbitration forum or, if none can be agreed upon, by the American Arbitration Association ("AAA"). The arbitration hearing will be conducted in the jurisdictional district encompassed by the Los Angeles County Superior Court, or at a place somewhere else more convenient if we mutually agree. Premier and Dealer will each pay our own attorney's fees and witness and experts' expenses, except as otherwise required by law or this Agreement. The arbitration award must be in writing. Any award must be kept confidential. The arbitrator's decision is final and binding.

**Other than as expressly provided in this Agreement, Premier and Dealer agree that only an arbitrator may resolve Claims. You agree not to bring or participate as a class representative or a class member in any class action in arbitration or in any other consolidated proceeding. Any Claim between Dealer and Premier must be resolved on an individual basis. Arbitration is not available and will not be conducted on a class-wide basis.**

If any part of this arbitration clause, other than the Class Action Waiver, is found by a court or arbitrator to be unenforceable, the remainder is enforceable. If the Class Action Waiver is found by a court or arbitrator to be unenforceable, the remainder of this arbitration clause is unenforceable. This Agreement will survive the termination of the note, regardless of reason for termination. Either you or

---

[3] The Dealer Agreement refers to SJAO as "Dealer."  Dkt. 15-4 at 1 (preamble).

3

we can compel arbitration in any court proceeding, regardless of which party filed suit. Either you or we can enforce an arbitration award. This Agreement does not stop you from filing a complaint with a federal, state, or local regulator.

This Agreement shall be governed in accordance with the laws of the State of California, without regard to any conflicts of law provisions. Jurisdiction and venue of any arbitration and any action will be in Los Angeles County, California.

Dkt. 15-4 at 10-11 (§ 4.13) (emphasis in original).

### C.    Onbirback's Individual Personal Guaranty

Plaintiff Onbirback personally guaranteed SJAO's performance of the Dealer Agreement by executing an Individual Personal Guaranty ("Guaranty").  Dkt. 15-2 ¶ 7; Dkt. 15-4 at Ex. A. Section 16 of the Guaranty states:

In the event of any suit or action arising out of this Guaranty, the parties agree that upon demand by either Guarantor, Dealer, Premier, or its assigns, the matter shall be resolved by submitting the case to arbitration. In the event an opposing party objects to a party's lawful demand for arbitration following the initiation of a legal action and forces the demanding party to file a motion to compel arbitration, the prevailing party shall be entitled to recover reasonably attorney's fees and costs in bringing such a motion.

In either choice of arbitration or a resolution by a court of law, the prevailing party shall be entitled to recover, in addition to statutory costs and disbursements, its reasonable attorneys' fees, whether incurred before trial, at trial, on appeal, or in an arbitration proceeding.

This Agreement shall be governed in accordance with the laws of the State of California, without regard to any conflicts of law provisions. Jurisdiction and venue in any action will be in Los Angeles County, California.

Dkt. 15-4 at Ex. A ¶ 16.

### D.    The Prior Arbitration Action

Plaintiffs and Premier previously engaged in arbitration before the American Arbitration Association ("AAA") pursuant to the Dealer Agreement and Guaranty (the "Prior Arbitration Action").  Dkt. 15-3 ¶ 7.   In that proceeding, which Premier instituted on or about November 23, 2023, Plaintiffs attempted to file a cross-claim, which Premier contends was similar to the claims Plaintiffs now make in this action.  *Id.* ¶¶ 7-8, 10.  According to Premier, Plaintiffs failed to pay the required filing fees to AAA, thereby abandoning the cross-claim.  *Id.* ¶ 8.  The Arbitrator in the Prior Arbitration Action issued an award in favor of Premier, which is the subject of a petition

to confirm in Los Angeles County Superior Court.  *Id.* ¶ 9.

### E.    Procedural background

Plaintiffs filed this lawsuit on July 7, 2025.  Dkt. 1 ("Complaint").  The Complaint contains causes of action for:  (1) bank fraud; (2) wire fraud; (3) violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"); (4) intentional misrepresentation/fraud; (5), (6), and (9) various conspiracies; (7) grand theft; and (8) concealing Plaintiffs' cash.  *Id.*

On July 31, 2025, counsel for Defendants Premier, Rastegar, and Horowitz sent Plaintiffs a written demand that they arbitrate the claims raised in the Complaint.  Dkt. 15-3 ¶ 2 and Ex. 2 (Dkt. 15-5).  Plaintiff Onbirback responded by refusing to submit the claims to arbitration.  *Id.* and Ex. 3 (Dkt. 15-6).

The Moving Defendants now move to compel arbitration of all of Plaintiffs' claims.

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to written contracts "evidencing a transaction involving commerce."  9 U.S.C. § 2; *see also Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 111-12 (2001).  Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This provision reflects "both a liberal federal policy favoring arbitration [] and the fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted).

A court must determine two "gateway" issues in assessing whether to compel arbitration: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).  Some arbitration agreements contain a delegation clause.  "A delegation clause is a clause within an arbitration provision that delegates to the arbitrator gateway questions of arbitrability, such as whether the agreement covers a particular controversy or whether the arbitration provision is enforceable at all."  *Caremark, LLC v. Chickasaw Nation,* 43 F.4th 1021, 1029 (9th Cir. 2022).  "The presence of a delegation clause further limits the issues that a court may decide."  *Id.*  "[I]ssues of validity and arbitrability, can be delegated to an arbitrator by agreement," but "parties cannot delegate issues of formation to the

arbitrator." *Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 634-35 (9th Cir. 2021).

As such, a court must first resolve any challenge alleging that an agreement to arbitrate was never formed. *Caremark*, 43 F.4th at 1030.   Next, if there is a delegation clause, the Court must resolve any challenge directed specifically to its enforceability. *Id*.   "Finally, if the parties [formed] an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance." *Id*. at 1021.

District courts use the summary judgment standard when ruling on a motion to compel arbitration. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021).   A party seeking to compel arbitration has the burden of proving that, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact. *Lopez v. Dave, Inc.*, No. 22-cv-16915, 2023 WL 8594393, at *1 (9th Cir. Dec. 12, 2023); Fed. R. Civ. P. 56(a).

If the Court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the [C]ourt shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.   But "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." *Id.*

Where the claims alleged in a complaint are subject to arbitration, the Court must stay the action pending arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 478–79 (2024); 9 U.S.C. § 3.

## III.     BRIEFING AND EVIDENTIARY ISSUES

### A.     Overview of briefing on motions to compel arbitration

The briefing on the two pending motions to compel arbitration, which was somewhat complicated, proceeded as follows.   The first motion to compel arbitration was filed by Defendants Premier, Rastegar, and Horowitz. Dkt. 15.   Plaintiffs filed an opposition. Dkt. 29, 30. Premier, Rastegar, and Horowitz thereafter filed a reply in support of the motion to compel arbitration. Dkt. 33.   The reply included objections to Plaintiffs' opposition brief. *Id.*   Plaintiffs thereafter filed an additional brief on the first motion to compel arbitration. Dkt. 36.

On September 23, 2025, after briefing on the first motion to compel arbitration was

United States District Court
Northern District of California

completed, the Court issued an order that, among other things, granted Defendant Mendoza's motion to set aside a default that had been entered against him. Dkt. 34 (the "9/23/25 Order"). The Court set deadlines for Mendoza to file a motion to compel arbitration and for the briefing on that second motion to compel arbitration. *Id.* The Court further ordered the Parties to "minimize any duplication of effort in briefing Mendoza's motion to compel arbitration by incorporating by reference their previous briefing on the motion to compel arbitration by Defendants Premier et al. (Dkt. 15) where appropriate." *Id.*

The 9/23/25 Order also informed Plaintiffs that Plaintiff SJAO may not appear pro se or be represented by a non-attorney. *Id.* The Court set a deadline for counsel for SJAO to make an appearance. *Id.* SJAO's counsel thereafter timely entered an appearance. Dkt. 50.

Defendant Mendoza timely filed the second motion to compel arbitration. Dkt. 43. Plaintiffs filed an opposition (Dkt. 44), and Mendoza filed a reply that included objections to Plaintiffs' opposition brief (Dkt. 45). Plaintiffs thereafter filed an additional brief on the second motion to compel arbitration. Dkt. 48, 49.

The Court held a Case Management Conference on December 9, 2025 and issued an order on the same day. Dkt. 66 (the "12/9/25 Order"). Among other things, the 12/9/25 Order addressed SJAO's recent appearance through counsel by setting deadlines for Plaintiff SJAO to file a consolidated opposition to the motions to compel arbitration and for the Moving Defendants to file a consolidated reply. *Id.*

SJAO thereafter filed a consolidated opposition to the motions to compel arbitration (Dkt. 75), and the Moving Defendants filed a consolidated reply (Dkt. 86).

### B.    Evidentiary objections

The Moving Defendants object to Plaintiffs' initial oppositions to both motions to compel arbitration on grounds including the following: (1) Plaintiff SJAO, as a self-represented party, is prohibited from opposing the motions to compel or moving for any relief; (2) Plaintiffs' opposition briefs fail to comply with the formatting requirements of Civil Local Rule 3-4(c)(2) and with other procedural requirements; and (3) the opposition briefs improperly contain a request for substantive relief to the extent they seek summary judgment on Plaintiffs' fifth cause of action and attempt to set a hearing on that request. Dkt. 33, 45.

United States District Court
Northern District of California

Although well-taken, Defendants' objections have already been addressed by the Court and/or do not warrant additional measures.  The Court has already addressed Plaintiff SJAO's initial improper attempts to appear pro se or through Plaintiff Onbirback by setting a deadline for SJAO to appear through counsel.  Now that SJAO has appeared through counsel and has filed a consolidated brief on the pending motions to compel arbitration, the Court will treat Plaintiffs' initial briefs in opposition to the motions to compel (Dkt. 29-30, 44, and 48-49) as being on behalf of Plaintiff Onbirback only.

On this occasion, the Court will not sanction Plaintiffs for failure to conform to the formatting and procedural requirements cited by Defendants but **cautions Plaintiffs** that the Court may strike any future briefs that do not comply with the requirements of the Federal Rules of Civil Procedure, this District's Civil Local Rules, or the undersigned's Standing Orders.

The Court previously vacated the hearing that Plaintiffs attempted to set in their opposition to the first motion to compel arbitration.  Dkt. 31.  As the Court has previously indicated, it treats Plaintiffs' requests for a ruling on their fifth cause of action as additional arguments as to why the Court should deny the motions to compel arbitration.  *See* Dkt. 55.  The Court addresses that argument below.

Plaintiffs filed additional briefs following the replies on each of the motions to compel arbitration, without prior Court approval.  Dkt. 36, 48-49.  Pursuant to Civil Local Rule 7-3(d), the Court will consider those filings only to the extent they state objections to new evidence contained in Defendants' reply briefs.

## IV.    MOTION TO COMPEL ARBITRATION

### A.    Formation of Arbitration Agreement

 "[T]he issues reserved to the courts for decision 'always include' whether an arbitration agreement was formed, even in the presence of a delegation clause." *Caremark*, 43 F.4th at 1030 (citing *Granite Rock Company v. International Brotherhood of Teamsters*, 561 U.S. 287, 297 (2010)).  The party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (internal quotation marks and citations omitted).  In determining whether an agreement to arbitrate exists, federal courts apply state law principles of

United States District Court
Northern District of California

contract formation. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). To form a contract under California law, the parties must manifest their mutual assent to the terms of the agreement in writing, orally, or through conduct. *Id.*; *see also Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025).

Plaintiffs do not dispute that they entered into a Dealer Agreement with Premier that contained the arbitration provision and delegation language quoted above. *See* Dkt. 1 ¶ 37 and Ex. A; Dkt. 29 at 9; Dkt. 75 at 1-2 (stating that Plaintiff SJAO and Premier "entered into a Dealer Agreement" and that "[t]he Dealer Agreement includes an arbitration provision"). In fact, Plaintiffs attached the Dealer Agreement (which includes the Guaranty) as an exhibit to the Complaint. Ex. A to Dkt. 1. Nor do Plaintiffs specifically challenge the enforceability of the delegation clause. *See Caremark*, 43 F.3d at 1029 ("a party must challenge[] the delegation provision specifically for a court to intervene" (internal quotation marks and citations omitted)). Accordingly, the Court concludes that an agreement to arbitrate was formed and that it contains a delegation clause.

The Court now turns to the main areas of dispute raised by Plaintiffs: (1) whether Individual Defendants Rastegar, Horowitz, and Mendoza may invoke the arbitration clause in the contracts between Plaintiffs and Premier; (2) whether the claims Plaintiffs make in this case fall outside the scope of the arbitration clauses; and (3) whether the Moving Defendants waived the right to demand arbitration of the claims made by Plaintiffs in this case. *See* Dkt. 29; 44; 75.

### B.   Ability of Individual Defendants to Invoke Arbitration Agreement

Because the relevant arbitration agreements are contained in contracts between Plaintiffs and Premier, Plaintiffs argue that they are not required to arbitrate their claims against Individual Defendants Rastegar, Horowitz, and Mendoza, who are not signatories to the contracts. *See* Dkt. 29 at 12-14; Dkt. 44 at 14-15; Dkt. 75 at 5-7, 13-14.

A threshold question is whether the ability of the non-signatory Individual Defendants to invoke the arbitration agreements is a question to be decided by the Court or is instead delegated to the arbitrator. For the question of arbitrability by non-signatories to be delegated to an arbitrator, the parties must "clearly agree to submit the question of arbitrability to arbitration," otherwise arbitrability is "subject to independent review by the courts." *Young v. Solana Labs,*

*Inc.*, No. 24-6032, 2025 WL 2953247, at *1 (9th Cir. Oct. 20, 2025) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 947 (1995)).  Courts should "hesitate to interpret silence or ambiguity" as delegating arbitrability.  *Young*, 2025 WL 2953247, at *1 (quoting *First Options*, 514 U.S. at 945).

In *Kramer v. Toyota Motor Corp.*, the Ninth Circuit affirmed the district court's holding that the court, rather than the arbitrator, had the authority to address the standing of a non-signatory automobile manufacturer (Toyota) to compel arbitration under contracts between vehicle purchasers and dealerships that contained arbitration provisions with delegation clauses.  705 F.3d 1122, 1127-28 (9th Cir. 2013).  As subsequent cases have explained, however, "the Ninth Circuit didn't announce a blanket rule that questions concerning a non-signatory's ability to compel arbitration must always be resolved by the court" but "[t]o the contrary, the Ninth Circuit's fact-specific ruling was that 'because the arbitration clause is limited to claims between "you and us"—i.e. Plaintiffs and the Dealerships,' '[t]he language of the contracts ... evidences Plaintiffs' intent to arbitrate arbitrability with the Dealerships and no one else.'" *Herrera v. Verra Mobility Corp.,* No. CV-20-00515-PHX-DWL, 2020 WL 6781269, at *5 (D. Ariz. Nov. 18, 2020) (quoting *Kramer*, 705 F.3d at 1127-28).  Where, by contrast, an arbitration clause defines the relevant parties more broadly, it may provide "clear and unmistakable evidence" that the party resisting arbitration agreed to arbitrate arbitrability with non-signatories.  *Herrera*, 2020 WL 6781269, at *5; *see also Banh v. Am. Honda Motor Co., Inc.*, No. 2:19-CV-05984-RGK-AS, 2020 WL 5035095, at *3 (C.D. Cal. 2020) (holding that non-signatory Honda was entitled to compel arbitration under an arbitration agreement with a delegation clause between Acura and automobile purchasers where Acura was defined to include Honda but not under a second set of contracts that did not define Acura to include Honda).

Here, the arbitration and delegation clause in the Dealer Agreement extends to "any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this arbitration clause and the arbitrability of the claim or dispute), between Dealer and Premier *or our employees, agents, successors or assigns* … " Dkt. 15-4 at 10-11 (§ 4.13) (emphasis added).  Under the legal authorities discussed above, this language supports a conclusion that Plaintiffs agreed to arbitrate the arbitrability of claims against the non-signatory Individual Defendants, who

United States District Court
Northern District of California

United States District Court
Northern District of California

are employees of the signing party, Premier.

Nevertheless, there is some disagreement in the case law as to whether the court or the arbitrator should decide questions of arbitrability involving non-signatories. *See, e.g., Atkins v. Amplitude, Inc.*, No. 24-CV-04913-RFL, 2025 WL 2521732, at *2–3 (N.D. Cal. Sept. 2, 2025) (holding that question of arbitrability involving non-signatories is for "[t]he court, not the arbitrator," citing cases). Therefore, the Court will address whether the Individual Defendants may compel arbitration in this case.

Litigants who are not parties to an arbitration agreement may invoke or be compelled to submit to arbitration under the FAA if allowed under the relevant state contract law—typically, under principles of equitable estoppel, agency or third-party beneficiary. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009); *see also Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229-1234 (9th Cir. 2013) (recognizing all three theories under California law but finding each theory inapplicable to support enforcement by nonsignatory under facts). Here, Rastegar, Horowitz, and Mendoza invoke third-party beneficiary and equitable estoppel theories in arguing that they should be able to compel arbitration of Plaintiffs' claims against them. Dkt. 15-1 at 7-9; Dkt. 43-2 at 4-7.

### 1.      Third-party beneficiaries

Under California law, non-signatories who are third-party beneficiaries to the arbitration agreement may compel arbitration. *Ronay Family Ltd. P'ship v. Tweed*, 216 Cal. App. 4th 830, 838 (2013). To qualify as a third-party beneficiary, the non-signatory is "obligated to prove that 'express provisions of the contract,' considered in light of the 'relevant circumstances,' show that (1) 'the third party would in fact benefit from the contract;' (2) 'a motivating purpose of the contracting parties was to provide a benefit to the third party;' and (3) permitting the third party to enforce the contract 'is consistent with the objectives of the contract and the reasonable expectations of the contracting parties.'" *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 946 (9th Cir. 2022) (quoting *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (2019)). To determine whether allowing a third party to enforce an arbitration agreement is consistent with the objectives of the agreement and reasonable expectations of the party, courts "focus on 'the language of the contract and all of the relevant circumstances under which the contract was entered into' to determine if

'third party enforcement will effectuate the contracting parties' performance objectives, namely those objectives of the enterprise embodied in the contract, read in light of surrounding circumstances.'" *Ngo*, 23 F.4th at 948 (emphasis omitted) (quoting *Goonewardene*, 6 Cal. 5th at 830–31).

The express language of the arbitration agreement in the Dealer Agreement demonstrates that the Individual Defendants would benefit from the arbitration agreement, that the agreement was designed to benefit them, and that allowing the Individual Defendants to enforce the agreement is also consistent with the objectives of the contract and the reasonable expectations of the contracting parties.  Under the arbitration provision in the Dealer Agreement, SJAO "agrees that any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this arbitration clause and the arbitrability of the claim or dispute), between Dealer and Premier or our employees, agents, successors or assigns" is subject to arbitration.  Dkt. 15-4 at 10-11 (§ 4.13).  The arbitration provision extends to "any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)." *Id.* The Individual Defendants fall within this provision because they are employees of Premier.  Accordingly, the express language of the agreement permits the Individual Defendants, as employees of Premier, to enforce the agreement as third-party beneficiaries.

Plaintiff SJAO challenges only Defendant Mendoza's status as a third-party beneficiary, not the status of Defendants Rastegar or Horowitz.  *See* Dkt. 75 at 13-14.  SJAO argues that under *Ngo* and *Murphy*, "non-signatories cannot enforce arbitration clauses unless the contract clearly confers that right." *Id.*  But SJAO fails to address the language in the Dealer Agreement's arbitration provision that specifically extends the provision to the signatories' employees, such as Mendoza.  "It is well-established that "[i]t is 'not necessary that the beneficiary be named and identified as an individual'" and that ""[a] third party may enforce a contract where he shows that he is a member of a class of persons for whose benefit it was made.'" *Ferreira v. Uber Techs., Inc.*, No. 23-CV-00518-JST, 2023 WL 7284161, at *4–5 (N.D. Cal. Nov. 3, 2023) (quoting *Ronay*, 216 Cal. App. 4th at 838–39).  Although in *Murphy*, the Ninth Circuit held that BestBuy was not a third-party beneficiary of a contract between a consumer and DirecTV, a separate

United States District Court
Northern District of California

company, because the agreement contained a third-party beneficiary provision that named another entity, but not BestBuy (724 F.3d at 1234), here, in contrast, the arbitration provision in the Dealer Agreement states that employees of SJAO and Premier may enforce the agreements as third-party beneficiaries.

Plaintiff Onbirback does not clearly address the argument that the Individual Defendants may compel arbitration as third-party beneficiaries under the arbitration provision of the Dealer Agreement.  He argues only that "[t]he Dealer Agreement's arbitration clause is being misused by Defendant Premier Auto Credit to shield itself and other non-signatory Defendant from derivative liability stemming from the conduct of Defendants Roger and Leidy."  Dkt. 29 at 11; *see also id.* at 17 ("In the present case, the arbitration clause is being used to shield all Defendants, including non-signatories, from any injunction that could prevent their illegal conduct, thereby contravening established public policy and legal principles").  These arguments do not overcome the Individual Defendants' showing that they are entitled to invoke the arbitration provision in the Dealer Agreement.

Accordingly, the Court concludes that in light of the language and circumstances of the arbitration agreement, Individual Defendants Rastegar, Horowitz, and Mendoza are third-party beneficiaries to the arbitration agreement and may enforce the agreement and compel arbitration.

### 2.    Equitable Estoppel

The Individual Defendants are also entitled to enforce the arbitration agreement against Plaintiffs under the doctrine of equitable estoppel.  "Under California law, '[w]hen a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances:  (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of the interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.'"  *Atkins,* 2025 WL 2521732, at *2–3 (quoting *Kramer*, 705 F.3d at 1128-29).  Both circumstances apply here.

United States District Court
Northern District of California

To determine whether a plaintiff's claims are intimately founded in and intertwined with the terms of the written agreement, courts look at "the relationship between the parties and their connection to the alleged violations." *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 707 (9th Cir. 2024) (quotation omitted). "The purpose behind equitable estoppel is to prevent a party from 'relying on an agreement for one purpose while disavowing the arbitration clause of the agreement.'" *Bender v. Twilio Inc.*, No. 24-cv-04914-AMO, 2025 WL 2308484, at *5 (N.D. Cal. Aug. 11, 2025) (quoting *Goldman v. KPMG, LLP*, 92 Cal. Rptr. 3d 534, 551 (2009)). Thus, the Court considers whether Plaintiffs' claims are "fully viable without reference to" the terms of the Dealer Agreement. *Goldman*, 92 Cal. Rptr. 3d at 551.

Plaintiffs' Complaint refers to, relies upon, and attaches the Dealer Agreement. *See, e.g.,* Dkt. 1 ¶¶ 37-39 and Ex. A; *see also id.* ¶¶ 67, 76, 81, 90, 99, 107, 114, 120, and 127. Plaintiffs' claims stem from Defendants' alleged conduct in connection with the assignment and sale of retail motor vehicle purchase contracts, which is the subject of the Dealer Agreement. *See* Dkt. 1 and Ex. A; *see also* Dkt. 29 at 8, 9.

The second circumstance under which equitable estoppel arises applies as well. This case involves allegations of interdependent and concerted misconduct by Premier, the Individual Defendants, and others. Plaintiffs accuse "Defendants and each of them" of being "part of an Organized Enterprise by which they set up a scheme in various dealerships <u>inside and outside of California</u>" in which "Premier Knowingly and Deliberately approved the inflating income misrepresenting job titles on the Falsified auto loan applications … " Dkt. 1 ¶ 7 (emphasis in original). Plaintiffs paint Defendant Rastegar as "**the MASTER MIND of advising and instructing ALL other Defendants in committing the conduct of Deliberate Scheme at San Jose Auto Outlet.**" *Id.* ¶ 14 (emphasis in original). They allege fraudulent activity by and a conspiracy among Defendants Premier, Rastegar, Horowitz, Mendoza and others. *Id.* ¶ 52. Thus, according to Plaintiffs' allegations, the alleged misconduct of the Moving Defendants is interdependent.

Additionally, Plaintiffs' allegations demonstrate that the interdependent misconduct is connected to the obligations contained in the Dealer Agreement, which contains the arbitration provision. Core to Plaintiffs' theory is that pursuant to the Dealer Agreement, Premier placed a

United States District Court
Northern District of California

sales representative with underwriting authority at SJAO who worked as an agent on behalf of Premier. Dkt. 1 ¶¶ 37-39. This sales agent facilitated the allegedly falsified loan applications that are the subject of this litigation. *See id.* ¶¶ 41-53.

Equitable estoppel in the arbitration context is an application of the general equitable principle of contract law. "The 'overriding concern in equitable estoppel cases' is fairness." *Atkins,* 2025 WL 2521732, at \*3 (quoting *Ballesteros v. Ford Motor Co.*, 331 Cal. Rptr. 3d 232, 249 (2025), *aff'd on other grounds*, 570 P.3d 857 (Cal. 2025)). "[T]he point of equitable estoppel is that the [signing party]—although not expecting at the time of contracting to have to arbitrate with a nonsignatory—should thereafter reasonably expect to arbitrate if it decides to sue the nonsignatory on a claim clearly tethered to the contract and there exists a sufficient relationship between the nonsignatory and a signatory." *Id.* (quoting *Ballesteros*, 331 Cal. Rptr. 3d at 249). It would not be fair to let Plaintiffs avoid the effect of their arbitration agreement with Premier by suing additional non-signatories when the Complaint is directed toward conduct in which Premier and the non-signatories allegedly engaged in concert, and the claims are intertwined with, and indeed rely upon, the Dealer Agreement containing the arbitration clause.

Under the doctrine of equitable estoppel, Plaintiffs are bound to arbitrate with the Individual Defendants, based on their agreement to arbitrate with Premier, especially when the arbitration agreement expressly extends to employees, agents, successors or assigns of the signing parties.

### C.     Arbitrability of Plaintiffs' Claims

Plaintiffs offer extensive argument, couched in terms of various legal theories, to the effect that the Parties' arbitration agreement does not encompass the disputes at issue. *See, e.g.,* Dkt. 29, 44, 75. Plaintiffs' arguments do not overcome the Moving Defendants' ability to compel arbitration for two overarching reasons: (1) the broad scope of the arbitration provision in the Dealer Agreement; and (2) the delegation of the issue of arbitrability to the arbitrator.

#### 1.     Scope of the arbitration agreement

Other than in the context of sexual assault or harassment disputes, the FAA does not exclude from its scope any particular type of claim. Arbitration provisions in any contract

affecting commerce must be enforced without regard to the nature of the claim or dispute. *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532-533 (2012) (per curiam). Moreover, when the parties "have agreed to arbitrate *some* matters pursuant to an arbitration clause, … any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Granite Rock*, 561 U.S. at 298 (emphasis in original; internal quotes omitted).

Plaintiff SJAO also argues that its claims are not subject to the arbitration provision because they do not "arise out of" the Dealer Agreement. Dkt. 75 at 3-5. According to SJAO, it "alleges that Defendants implemented and concealed practices that exposed SJAO to financial loss, third-party liability, and regulatory risk—harms that arise from independent legal duties imposed by common law and statute, not from the Dealer Agreement itself." *Id.* at 4; *see also id.* at 14. However, the arbitration provision of the Dealer Agreement encompasses far more than breach of contract disputes: "Dealer agrees that any claim or dispute, whether in contract, tort, statute or otherwise … which arises out of or relates to Dealer's representations and warranties, Dealer's assignment of any RISC to Premier, or to this Agreement or to any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at Dealer's or Premier's election, be resolved by neutral binding arbitration instead of in court." Dkt. 15-4 at 10-11 (§ 4.13). The crux of Plaintiffs' allegations, as stated elsewhere in SJAO's opposition brief, is that the falsifications of loan applications, facilitated by a sales agent placed at SJAO by Premier pursuant to the Dealer Agreement, "enabled the approval of up to 290 auto loans at Plaintiff's dealership, primarily for customers who would otherwise not have qualified." *Id.* at 3; *see also* Dkt. 1 ¶¶ 7, 45. Such claims fall within the broad scope of the arbitration provision.

Although SJAO cites various cases for the proposition that arbitration may not be used to nullify statutory protections or remedies, enforcing the Parties' agreement to arbitrate disputes does not impermissibly "shield[] unlawful conduct from judicial scrutiny," as SJAO asserts. *See* Dkt. 75 at 7-10. Federal policy favors arbitration. *Concepcion*, 563 U.S. at 339. "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Id*. at 341; *see also Marmet*, 565 U.S. at 532. Thus,

16

California case law precluding arbitration of "public injunctive relief" under the state's unfair competition and consumer remedy laws is preempted by the FAA. *Ferguson v. Corinthian Colleges, Inc.,* 733 F.3d 928, 935 (9th Cir. 2013). Moreover, the duty to enforce arbitration agreements generally applies even where statutory claims are asserted. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987). This holds true even when claims arise under a federal statute designed to "further important social policies" because if a party can effectively vindicate the party's statutory cause of action through arbitration, "the statute serves its functions." *Green Tree Fin'l Corp.-Alabama v. Randolph,* 531 U.S. 79, 90 (2000).

A party arguing that a statute precludes arbitration bears the burden of showing that Congress intended to preclude arbitration of the statutory claim involved. *Shearson/American Express,* 482 US at 227. Plaintiffs have not made that showing here. Moreover, Plaintiffs seek monetary relief in this action (*see* Dkt. 1 at 25 (Prayer for Relief)), and they have not demonstrated that such remedies cannot be obtained through arbitration.

Plaintiff Onbirback makes many of the same arguments as SJAO as to why the claims in this suit are not subject to arbitration. *See* Dkt. 29, 44. In particular, Onbirback asserts that "this action presents a case of first impression in this District, and in the federal judiciary at large" because it "concerns the enforceability of an arbitration clause in circumstances in where a financial institution [Premier], together with its independent auditor (KPMG), is alleged to have conspired to defraud the Federal Deposit Insurance Corporation ("FDIC") and federally insured banks by FDIC, implicating the Financial Institutions Reform, Recovery, and Enforcement Action of 1989 ("FIRREA"), as well as federal banking regulations." Dkt. 29 at 3. Onbirback does not cite authority for his proposition that "cases of first impression" are exempt from being arbitrated pursuant to the parties' contractual arbitration clauses. The authority he does cite, which concerns the availability of arbitration in cases involving "public policy and statutory protections" (*id.* at 3-4), is addressed above.

Therefore, Plaintiffs' arguments as to why their claims are not covered by the arbitration provision are unavailing.

United States District Court
Northern District of California

17

### 2.    Delegation Clause

A more fundamental problem with Plaintiffs' arguments is that, as indicated in sections I.B. and II above, the parties agreed to arbitrate the issue of arbitrability.  Dkt. 15-4 at 10-11 (§ 4.13) (agreement to arbitrate "the interpretation and scope of this arbitration clause and the arbitrability of the claim or dispute").  Under the Parties' agreement to delegate the issue of arbitrability to the arbitrator, it is for the arbitrator, not this Court, to decide whether Plaintiffs' claims are arbitrable.

### D.    Waiver

Plaintiffs argue that Defendants have waived or forfeited the right to compel arbitration of Plaintiffs' claims in this case because they "did not permit SJAO's claims to be adjudicated on the merits" in the Prior Arbitration Action.  Dkt. 75 at 10.  Defendants state that Plaintiffs abandoned their attempt to assert cross-claims in the Prior Arbitration Action when they failed to pay the required filing fees to AAA.  Dkt. 15-3 ¶ 8.

In determining whether a party has waived the right to demand arbitration, courts apply "generally applicable contract law," under which "the party opposing enforcement of a contractual agreement must prove by clear and convincing evidence that the waiving party knew of the contractual right and intentionally relinquished or abandoned it."  *Quach v. California Com. Club, Inc.*, 16 Cal. 5th 562, 584 (2024); *see also Ugalde v. Syngenta Flowers, LLC,* No. 24-CV-07568-EKL, 2025 WL 1828513, at *5 (N.D. Cal. July 1, 2025).

Plaintiffs do not support their waiver argument with any evidence, much less clear and convincing evidence, that Premier did or said anything in connection with Plaintiffs' attempt to assert cross-claims in the Prior Abitration Action that would constitute a waiver of Premier's right to arbitrate this dispute.  Plaintiffs do not rebut the declaration filed by Defendants stating that Plaintiffs abandoned their attempt to assert cross-claims in the Prior Arbitration Action by failing to pay AAA's filing fees.  Accordingly, they have not demonstrated any action by the Moving Defendants constitutes waiver of their right to compel arbitration in this case.

### E.    Conclusion on Motion to Compel Arbitration

For the reasons discussed, the Moving Defendants' motion to compel arbitration is

**GRANTED.** The Court **STAYS** the case as between Plaintiffs and the Moving Defendants pending completion of arbitration. *Smith*, 601 U.S. at 478–79; 9 U.S.C. § 3.

## V. REQUEST FOR ATTORNEY'S FEES

Defendants Premier, Rastegar, and Horowitz request an award of the attorney's fees they incurred in bringing their motion to compel arbitration, pursuant to the attorney's fees provision in the Individual Guaranty. Dkt. 15-1 at 10-11. Meanwhile, Plaintiff Onbirback requests his attorney's fees in opposing the motions to compel arbitration. Dkt. 29 at 21; Dkt. 44 at 24.

Plaintiffs oppose the request of Defendants Premier, Rastegar, and Horowitz for attorney's fees on four grounds, arguing that: (1) Moving Defendants are not entitled to attorney's fees if their motion to compel arbitration is denied; (2) fee shifting provisions are strictly construed and do not apply here; (3) fee awards are improper where arbitrability is reasonably disputed; and (4) Defendants' own conduct bars any fee award. Dkt. 75 at 11-13; *see also* Dkt. 29 at 20.

Because the Court grants the motions to compel arbitration, Plaintiffs' first argument against an award of fees does not apply. Plaintiffs' second argument is also unavailing because the "plain language" in the Guaranty expressly authorizes an award of reasonable attorney's fees and costs against a party who "forces the demanding party to file a motion to compel arbitration." Dkt. 15-4 at p. 15 (§ 16). For the reasons discussed in granting the Moving Defendants' motions to compel arbitration, the Court finds that Plaintiffs did not reasonably dispute the arbitrability of the disputes in this case. Finally, Plaintiffs have not identified any conduct by the Moving Defendants that would properly bar an award of fees to them. Plaintiffs argue only that "Defendants selectively invoked arbitration, obtained a favorable award, and now seek to compel arbitration anew while requesting fees for doing so." Plaintiffs have failed to demonstrate that Moving Defendants were not within their rights in taking such actions.

The Court finds that the request by Defendants Premier, Rastegar, and Horowitz for fees in the total amount of $4,010.00 in connection with moving to compel arbitration is reasonable, and therefore **ORDERS** a single payment by Plaintiffs in the amount of $4,010.00 to those Defendants within **30 days** of the date of this Order.

## VI.    CONCLUSION

The Moving Defendants' motion to compel arbitration of Plaintiffs claims against them is **GRANTED** and litigation of those claims in this case is **STAYED** pending completion of the arbitration.[4]  Plaintiffs and the Moving Defendants must file a joint status report by the earlier of (1) 14 days from issuance of an arbitration award or (2) 90 days from the date of this Order. Plaintiffs are further **ORDERED** to pay Defendants Premier, Rastegar, and Horowitz a total of $4,010.00 within **30 days** of the date of this Order as reasonable attorney's fees incurred by those Defendants in moving to compel arbitration.

**SO ORDERED.**

Dated: March 23, 2026

SUSAN VAN KEULEN
United States Magistrate Judge

[4] In a separate order, the Court is granting Plaintiffs leave to amend certain of their claims against Defendant KPMG.  In light of the stay of Plaintiffs' claims against the Moving Defendants, Moving Defendants are not required to file a response to Plaintiffs' forthcoming amended complaint.

United States District Court
Northern District of California

20